**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**
**Clarksburg Division**

**JESSICA JOYCE GIFFORD,**

     **Plaintiff,**

v.

**TRANS UNION, LLC,**

     **Defendant.**

<div style="border:1px solid">

ELECTRONICALLY
FILED
**12/16/2025**
U.S. DISTRICT COURT
Northern District of WV

</div>

Civil Action No. 1:25-cv-123 Kleeh

## COMPLAINT

In this case, which is representative of numerous others, Defendant Trans Union, LLC ("TransUnion") published inaccurate information. This is not the first time Trans Union has made this mistake with Plaintiff Jessica Gifford.  *Gifford v. Trans Union, LLC, et al.*, 1:22-cv-00101-GMG (N.D.W.Va. 2022). Following the settlement of the first matter, Trans Union continued to wreak havoc with Plaintiff's credit report by splitting her credit profile into multiple reports that did not accurately depict Plaintiff's creditworthiness. Despite multiple requests for reinvestigation and correction by Ms. Gifford, Trans Union failed to reasonably investigate her disputes and continued to inaccurately report her credit profile to lenders, which led to denials.  Ms. Gifford repeatedly alerted Defendants that her file was improperly spliced, but Trans Union failed to ensure the accuracy of her credit information.  Plaintiff brings this action for actual, statutory, and punitive damages, and for costs and attorney's fees, pursuant to 15 U.S.C. § 1681 et seq. ("Fair Credit Reporting Act" or "FCRA").

## PARTIES

1.     Plaintiff Jessica Gifford ("Plaintiff" or "Ms. Gifford") is a "consumer" as defined by 15 U.S.C. § 1681a(c).

2.     (a)     Defendant Trans Union LLC (Trans Union), is an Illinois corporation registered to do business in West Virginia with its principal office address located at 555 West Adams, Chicago, IL 60661.

(b)     Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).   Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

(c)     Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

### JURISDICTION

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

### STATEMENT OF FACTS

5.     Plaintiff Jessica Gifford resided in the City of Morgantown, Monongalia County, WV.

6.     Plaintiff's twin brother also resides in Morgantown, WV.

7.     In addition to these similarities, Plaintiff and her twin also shared a merged credit history.

8.     Upon reviewing her credit disclosure in 2021, Plaintiff identified multiple accounts that did not belong to her that were being reported on her disclosure.

9.     Plaintiff disputed these false tradelines by mailing letters to Experian, Equifax, and TransUnion in February 2021.

10.     However, Defendant did not correct Plaintiff's credit disclosure.

11.      Despite this internally conflicting information, Defendant never undertook any steps to investigate, identify, or correct possible inaccuracies in its reporting on Plaintiff's credit following her dispute.

12.      Defendant included this information in Plaintiff's credit report due to its lax threshold designed to over-include information in consumer reports.

13.      TransUnion responded by sending Plaintiff's correspondence to her twin brother and merging her name with her twin's.

14.      On May 21, 2022, TransUnion responded to Plaintiff's dispute by stating that she did not have a credit report.

15.      TransUnion had mixed Plaintiff's credit report entirely with another person.

16.      Plaintiff obtained a report from TransUnion in July 2022, but the report did not contain complete and accurate information.

17.      Plaintiff filed a lawsuit on September 27, 2022, titled *Gifford v. Trans Union, LLC, et al.*, 1:22-cv-00101-GMG (N.D.W.Va. 2022).

18.      The matter was resolved with a confidential settlement agreement.

19.      Thereafter, Plaintiff continued to have issues with her Trans Union credit report.

20.      Plaintiff obtained a credit disclosure on September 6, 2024, with ID number 420154007-019 that included a tradeline for her Discover Bank credit card but did not include her auto loan.

21.      This September 6, 2024 report stated that Ms. Gifford had "been on our files since July 22, 2024."

22.      This was false.  Ms. Gifford had been on Trans Union's files for years before July 22, 2024.  See *Gifford v. Trans Union, LLC, et al.*, 1:22-cv-00101-GMG (N.D.W.Va. 2022).

23. This September 6, 2024 report also had a cover page stating, "an additional credit report for this consumer," but there were no more documents attached.

24. Consumers should only have a single credit disclosure/report.

25. On January 20, 2025, Ms. Gifford obtained a new credit disclosure from Trans Union with ID 420154007-022.

26. This January 20, 2025 disclosure contained the single tradeline for Discover Bank and indicated that she had "been on our files since July 22, 2024."

27. However, the January 20, 2025 report also had a cover page stating, "an additional credit report for this consumer," and contained an entirely separate credit disclosure.

28. This second credit disclosure stated that Ms. Gifford had "been on our files since 12/22/2020" and contained her auto loan with Global Lending and inquiries from Flagship Acceptance.

29. Plaintiff was concerned that her fragmented credit disclosure did not accurately reflect her creditworthiness.

30. On February 3, 2025, Plaintiff mailed a dispute letter to Trans Union asking it to reinvestigate the multiple credit reports that were not accurately depicting her creditworthiness.

31. On February 12, 2025, rather than investigating her dispute and providing results of the reinvestigation, Trans Union sent Plaintiff yet another credit disclosure.

32. The February 12, 2025 disclosure with ID 420154007-024 only contained the report with the Discover Bank tradeline that was on file since 7/22/2024.

33. The February 12, 2025 disclosure did not mention the tradelines or report that had been on file since 12/22/2020.

34.    On March 6, 2025, Trans Union provided an additional disclosure with ID 420154007-025.

35.    This March 6, 2025, disclosure contained three (3) separate reports: one that was on file since 7/22/2024, one that was on file since 12/22/2020, and one that stated she was on file since 1/31/2025.

36.    The disclosure that stated Plaintiff had "been on our files since 1/31/2025" contained only a single inquiry from Apple Cards with no other tradelines.

37.    After waiting for reinvestigation results that never came, Plaintiff mailed a second dispute letter in July 2025 to Trans Union, detailing the multiple credit reports that were generated in her name.

38.    On July 30, 2025, Trans Union responded by providing the same three credit disclosures.

39.    Trans Union never reinvestigated any of Plaintiff's disputes.

40.    Plaintiff had applied for an Apple Card credit line in January 2025.

41.    Apple Card declined to offer her credit because she had insufficient credit history.

42.    The same date that Apple Card declined her application (January 31, 2025), Trans Union had opened up a third disclosure for Plaintiff that did not contain her credit history of paying Discover Bank, Global Lending, and Huntington National Bank.

43.    Due to Trans Union's failure to ensure the maximum possible accuracy of Plaintiff's information, Plaintiff was denied credit opportunities.

44.    Hoping the credit reports had been re-merged, Plaintiff applied for credit on November 24, 2025.

45.    She was again denied credit based on an alleged insufficient credit history.

46.  This materially misleading credit report did not accurately portray Plaintiff's creditworthiness.

47.  Trans Union's reporting omitted material information from Plaintiff's credit history and was thus incomplete.

48.  Plaintiff filed a prior lawsuit because Trans Union mixed her file with her twin brother; now she's unable to access credit because she has a fragmented file with Discover Bank on one report, her Global Lending Auto loan on a second report, and an Apple Card inquiry on a third report.

49.  Plaintiff is eager to begin her financial life on the right foot, but Trans Union's willful violations of the FCRA prevent her from accessing the credit market and being evaluated by lenders on her merit.

50.  As a result of Defendants' conduct, Plaintiff has suffered loss of credit; loss of the ability to purchase and benefit from credit; increased insurance rates; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

<div align="center">

**COUNT ONE:**
**(Violation of 15 U.S.C. § 1681i)**
**FAILURE TO REINVESTIGATE**

</div>

51.  Plaintiff incorporates all of the preceding paragraphs by reference.

52.  Defendant TransUnion failed to conduct a reasonable reinvestigation of the information in Plaintiff's credit file after receiving actual notice of inaccuracies; failed to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; failed to provide written notice to Plaintiff of the results of a reinvestigation; and relied upon verification from a source it has reason to know is unreliable, in violation of 15 U.S.C. § 1681i.

53.     Defendant's conduct, action, and inaction were willful, or, in the alternative, negligent.

54.     As a result of Defendant's action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit, aggravation, inconvenience, embarrassment, and frustration.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a)     Appropriate statutory penalties for each violation of the FCRA;

(b)     Actual damages;

(c)     Punitive damages;

(d)     Reasonable attorney's fees and the costs of this litigation;

(e)     Pre-judgment and post-judgment interest at the legal rate;

(f)     Appropriate equitable relief, including the correction of Plaintiff's credit score; and

(g)     Such other relief as the Court deems equitable, just, and proper.

**COUNT TWO:**
**(Violation of 15 U.S.C. § 1681e(b))**
**FAILURE TO ASSURE ACCURACY**

55.     Plaintiff incorporates all of the preceding paragraphs by reference.

56.     Defendant TransUnion failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files maintained and published concerning Plaintiff, in violation of 15 U.S.C. § 1681e(b).

57.     Defendant's conduct, action, and inaction was willful, or, in the alternative, negligent.

7

58.     As a result of Defendant's action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit, aggravation, inconvenience, embarrassment, and frustration.

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation of the FCRA;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit score; and

(g) Such other relief as the Court deems equitable, just, and proper.

### COUNT THREE:
### (Violation of 15 U.S.C. § 1681)
### [research frag files claims]

59.     Plaintiff incorporates all of the preceding paragraphs by reference.

60.     Defendant TransUnion failed to delete the false tradelines from the credit report and credit files maintained and published concerning Plaintiff after a reinvestigation would have found the data to be unverifiable, in violation of 15 U.S.C. § 1681i(a)(5).

61.     Defendant's conduct, action, and inaction were willful, or, in the alternative, negligent.

62.     As a result of Defendant's action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to his credit rating, lost opportunities to enter into consumer credit transactions, denial of credit, aggravation, inconvenience, embarrassment, and frustration.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Appropriate statutory penalties for each violation of the FCRA;

(b) Actual damages;

(c) Punitive damages;

(d) Reasonable attorney's fees and the costs of this litigation;

(e) Pre-judgment and post-judgment interest at the legal rate;

(f) Appropriate equitable relief, including the correction of Plaintiff's credit score; and

(g) Such other relief as the Court deems equitable, just, and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

> **Plaintiff,**
> **JESSICA JOYCE GIFFORD,**
> **By Counsel,**

**/s/ Benjamin M. Sheridan**
Benjamin M. Sheridan (# 11296)
Jed R. Nolan (#10833)

**Klein & Sheridan, LC**
3566 Teays Valley Road
Hurricane, WV 25526
T: (304) 562-7111
F: (304) 562-7115

E: ben@kleinsheridan.com
E: jed@kleinsheridan.com

*Counsel for Plaintiff*